UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARSHA HANNA, | : | CIVIL CASE NO. |
|    Plaintiff, | : | 3:02CV1797(DJS) |
| | : | |
| VS. | : | |
| | : | |
| CAROLE PANNOZZO, in her official | : | |
| capacity as Interim Director of | : | |
| Human Resources for the Bridgeport | : | |
| Board of Education; CAROLE PANNOZZO | : | |
| in her individual personal capacity; | : | |
| and the CITY OF BRIDGEPORT | : | |
| BOARD OF EDUCATION, | : | |
|    Defendants. | : | NOVEMBER 21st, 2003 |

**MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    *I.*    *Background*

At the time the defendants summarily terminated the plaintiff's employment, the plaintiff had worked for the defendant, City of Bridgeport Board of Education, in excess of nine years. (M.H. dep. p. 12). The plaintiff first started working for the defendant, Board of Education, as a clerical assistant in November of 1992. When she was terminated, the plaintiff held the position of clerical specialist, which represented a promotion from the clerical assistant position. (M.H. dep. p. 11). The plaintiff worked on a ten-month school calendar.

For the school year 2002-2003, the plaintiff was assigned to Bassick High School. The plaintiff, as a result of a work related injury to her back and subsequent heart related problems, had been on leave of absence from her employment from sometime in October of 2000 to her

return to work in September of 2002.  In October of 2002, the plaintiff, while working, fell on a wet floor in the bathroom of the office in Black Rock School, her job site for the 2000-2001 school year. (M.H. dep. pp. 12, 13, 17).  After a period of conservative treatment, the plaintiff was scheduled to undergo a spinal fusion on September 19, 2001.  However, because the plaintiff had suffered a heart attack the previous year, the neurosurgeon, who was scheduled to perform the spinal fusion, required clearance from her cardiologist, Dr. Adefuin.  (M.H. dep. p. 18).  Dr. Adefuin administered a stress test to the plaintiff upon the completion of which the plaintiff was immediately transported to the hospital, where she underwent quadruple heart bypass surgery. (M.H. dep. p. 19).

On September 4, 2002, the plaintiff returned to work at Bassick High School.  Prior to her return, the plaintiff received medical clearance from her health care providers permitting her return to work without any restrictions being placed on her job activities. (M.H. dep. p. 23). However, after she returned to work, the plaintiff suffered severe episodes of angina.  "I returned to work September 4, 2003[1] (sic), felt great. I started.  I had problems when it came to stairs. The school required trips to the main office starting 7:30 in the morning.  We had a couple of meetings that I had to be back at 9:00 a.m. and cover another secretary's lunch at 11:15 until 12:00 o'clock daily, and the walking back, I started with angina, and which ended up to be severe angina, because you're trying to get things done quickly."  (M.H. dep. p. 24). Understandably, the plaintiff contacted her cardiologist when she started experiencing the angina episodes.  "I contacted Dr. Adefuin approximately the middle of September, stating to him that I

---

[1] The plaintiff misspoke; she returned to work on September 4, 2002.  ((M.H. dep. p. 24).

had had this angina, and he questioned what I was -- what brought it on, and I explained to him about the stairs situation and the many trips daily that I had to do back and forth. Dr. Adefuin's suggestion to me was to go to my supervisor, to tell her, to explain to her what this is, and to see if I could try and avoid climbing the stairs, where I was saying I would do this three times a day, if I could limit it to perhaps once a day. So he suggested I first talk to my immediate supervisor." (M.H. dep. p. 25). The plaintiff followed Dr. Adefuin's suggestion and conferred with her immediate supervisor who refused to alter, in any manner, the plaintiff's schedule of trips, up and down the stairs, to the main building of Bassick High School. The sole reason the plaintiff made the request was to alleviate the cause of the angina from which the plaintiff was suffering. (M.H. dep. p. 28). The plaintiff then spoke with the principal of the school on September 27, 2002, again requesting that the amount of daily trips up and down the stairs be limited. The school principal informed the plaintiff that he would get back to her; he never did. (M.H. dep. p. 29).

The plaintiff again spoke with Dr. Adefuin on September 27, 2002, when she did not receive a favorable response from her supervisor or the school principal to her request that she be accommodated. (M.H. dep. p. 29). "I explained the situation, that they would not lessen the stairs. (M.H. dep. p. 33). Dr. Adefuin, at that point in time, prepared a letter dated September 27, 2002, in which he requested "two restrictions" on her job activities. "At the present time she is to avoid climbing stairs and limit her walking to short distances. When her condition improves sufficiently, those restrictions will be removed." (Defendants' Exhibit 4). On October 2, 2002, the plaintiff hand delivered the letter to the school principal, who questioned her about

3

its meaning. (M.H. dep. p. 35). "Well, Mr. Remy asked again, 'What does this mean? Does this mean that you can't go up and down the stairs?' I said, 'No, not at all, but I'm to avoid the trips,' and I said, 'An easy way is if I could avoid that 7:30 in the morning pickup of mail, and come once for the 11:15 lunch, where at least I would go there and you have 45 minutes to sit in an office and do office work there in the main office,' and then after 45 minutes, I was able to walk back to my annex building." (M.H. dep. pp. 34, 35).

On that same day, October 2, 2002, the plaintiff received a call from the defendant, Carole Pannozzo, the Board of Education's interim Director for Human Resources, who requested that the plaintiff come to her office in the morning to discuss her position. Pannozzo did not provide the plaintiff with any particulars regarding the reason for the meeting other than to say the meeting would involve the plaintiff's position. (M.H. dep. p. 36). At the onset of the meeting, the defendant, Pannozzo, immediately terminated the plaintiff's employment without notice, an opportunity to be heard, or an explanation of any sort. "She walked into the office. I was in the waiting area. She said, 'Good morning, Marsha.' She then proceeded to walk into her office. She was in there perhaps a minute, and then she just called from her office, 'You can come in now, Marsha.' I came in. She said, 'Have a seat.' I sat. She sat at her desk. She had a folder. She pulled out a piece of paper and she said, 'You're probably wondering why I've called you here.' She said, 'It's regarding the letter that I believe you sent to me from Dr. Adefuin,' which I told her, 'No, I believe Mr. Remy[2] sent that to you. With that, she proceeded to look at a piece of paper, and she said to me, 'We reinstated you with the, 'I don't want to say

---

[2] Mr. Remy, at the time, was the Bassick High School Principal.

assumption, they reinstated me, that I was able to return to work without any restrictions.' She said, 'Now I have this letter dated September 27 from Dr. Adefuin, and you currently have two restrictions, and' she said, 'because of that,' she said, 'effective October 4 you are terminated.' (M.H. dep. pp. 37, 38).

When the plaintiff questioned the defendant, Pannozzo, on whether she had any recourse, Pannozzo "bent over and came within five inches of my face and she said, 'Do you understand you're terminated?'" (M.H. dep. p.39).

It is undeniable that the defendant, Pannozzo, did not provide the plaintiff with any forewarning that the plaintiff's termination was being considered or, for that matter, the reasons her termination was under consideration. (C.P. dep. pp. 17, 18, 26, 34). Although the defendants' attempt to skirt a discussion of the matter of prior notice, it is indisputable that the defendant, Pannozzo, never informed the plaintiff of the reasons for her termination at any time prior to ushering her into her office where the firing took place. (C.P. dep. pp. 18). The defendant, Pannozzo, prepared the termination letter the day before the actual firing, and nothing prevented her from conveying the reasons contained in the letter to the plaintiff prior to the meeting. (C.P. dep. pp. 18, 34).

The plaintiff, by letter from her attorney, dated October 4, 2002, demanded immediate reinstatement to her position. (Exhibit 1) When the defendants failed to comply with the plaintiff's demand, the present action was commenced. Some eight months later, the defendant, Bridgeport Board of Education, offered the plaintiff "the opportunity to return to a position as clerical specialist for the Bridgeport Board of Education." (Exhibit A attached to Defendant,

5

Pannozzo's affidavit submitted with defendants' motion for summary judgment). The plaintiff accepted the defendants' offer. She started working in September, 2003. However, the defendants have not made the plaintiff whole for the losses she suffered as a result of her being out of work for almost the entire school year. Although her seniority was recognized, she was not compensated for her financial loss as a result of her being out of work almost one year.

    II.    *Discussion*

        a.  *Plaintiff's Due Process Protections*

In their motion for summary judgment, the defendants do not contest that the plaintiff possessed a property interest in her continued employment with the defendant, Bridgeport Board of Education. "A public employee has a property interest in continued employment if the employee is guaranteed continued employment absent just cause for discharge. *Ciambriello v. County of Nassau,* 292 F.3d 307, 313 (2d Cir. 2002). Under the terms of the collective bargaining agreement ("CBA") between the city of Bridgeport and Local 1522, Council 4 of the American Federation of State, County and Municipal Employees, AFL-CIO ("Local 1522"), the plaintiff could not be terminated from her employment except for just cause. (Exhibit F at pp. 5, 13, attached to McCarthy's affidavit submitted with defendants' motion for summary judgment). As a result of the provisions of the CBA, the plaintiff possessed a property right to her continued employment with the defendant, Bridgeport Board of Education. See *Moffitt v. Town of Brookfield,* 950 F. 2d 880, 885 (2d Cir. 1991); *Dobosz v. Walsh*, 892 F. 2d 1135, 1141 (2d Cir. 1989). Because the plaintiff possessed a property interest in her continued employment, the Fourteenth Amendment to the United States Constitution granted the plaintiff the right to notice

6

and an opportunity to be heard prior to her employment being terminated. *Cleveland Bd. of Educ. V. Loudermill*, 470 U.S. 532, 542, 84 L.Ed 2d 494, 105 S.Ct. 1487 (1985). And, in the very minimum, due process requires pre-termination notice of the reasons for which the termination of the plaintiff's employment was being considered, and an opportunity to respond to those reasons. *Id. at p. 546.* See also *Todaro v. Norat* 112 F.3d 598, 599, 600 (2d Cir. 1997) ("The district court's decision that a post-termination hearing under Article 78 was constitutionally adequate directly conflicts with the holding of *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985), which requires a government entity to give its tenured employee notice and an opportunity to respond before he is terminated from a public position. Due process does not require a full, judicial-type hearing before employment is terminated, but certain features must be present to fulfill the minimum requirements of fairness: *the employee must be given oral or written notice of the charges against him, an explanation of the employer's evidence, and the opportunity to present his side of the story*. *Id.* at 546, 105 S. Ct. at 1495. A post-termination proceeding such as that provided under Article 78 does not meet the *Loudermill* requirements because it takes place after the employee has lost his job.") (Emphasis added).

Although the defendants emphasize the availability of a grievance process under the terms of the CBA, it has no relevance to the issues in the present case. First, the law has long been settled that exhaustion of administrative procedures is *not* a requirement to advancing a due process claim pursuant to Title 42 U.S.C. § 1983. The defendants confuse the requirement of exhaustion of administrative remedies, which is not required of a plaintiff prior to bringing a due

7

process claim under Title 42 U.S.C. § 1983, with the concept of adequacy of available state remedies. A procedural due process claim under the Fourteenth Amendment raises the questions of: (1) whether the plaintiff has a protected property interest; (2) what process was due to the plaintiff; and (3) whether plaintiff was provided with this constitutional minimum in the case under review. *Narumanchi v. Board of Trustees of Connecticut State Univ.,* 850 F.2d 70, 72 (2d Cir. 1988). Once a protected interest is identified, a court must determine whether the plaintiff was deprived of that interest without due process. *Id*. A plaintiff in a section 1983 case is not required to exhaust her administrative remedies before bringing suit. *Patsy v. Board of Regents of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, a plaintiff must avail herself of the right to be heard pursuant to constitutionally adequate state remedies, if available. See Narumanchi, 850 F.2d at 72; Alba v. Ansonia Bd. of Educ., 999 F. Supp. 687 (D.Conn. 1998).

It is the defendants' failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim. *Cotton v. Jackson*, 216 F. 3d 1328, 1331 (11th Cir. 2000). There is no dispute that the plaintiff was not accorded a hearing of any type prior to her termination. The Union grievance procedure does not serve as an adequate remedy since the grievance procedure does not provide the minimal protections for an employee faced with employment termination, the most important of which is notice of the reasons for the discharge and the opportunity to be heard prior to termination.

The defendants seem to infer that they could deprive the plaintiff of her constitutional right to notice and an opportunity to be heard prior to her termination with impunity if a post-deprivation hearing is provided. This rationale is contrary to the holding of the United States Supreme Court in *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 1985. The Supreme Court specifically held in *Loudermill*, supra, that prior to terminating the employment of a tenured public employee, the tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. See also *Gilbert v. Homar*, 520 U. S. 924 (1997), 117 S.Ct. 1807, 1811 (1997). ("In *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985), we concluded that a public employee dismissible only for cause was entitled to a very limited hearing prior to his termination to be followed by a more comprehensive post-termination hearing. Stressing that the pre-termination hearing 'should be an initial check against mistaken decisions - essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action,' Id., at 545-546, 105 S.Ct., at 1495, we held that pre-termination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story. . .") (Emphasis supplied.)

The United States Court of Appeals for the Second Circuit, likewise, flatly rejected the proposition that a post-termination proceeding could remedy the initial failure to satisfy the Loudermill requirements of a pre-termination hearing. See <u>Todaro v. Norat</u>, 112 F.3d 598, 599 (2d Cir. 1997). In *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 331 (9th Cir.

9

1995), the Ninth Circuit Court of Appeals discarded the proposition that "despite the apparent inadequacies of the pre-termination process, . . . numerous post-termination hearings provided [the plaintiff] with all the process she was due." The Ninth Circuit held that "a full post-deprivation hearing does not substitute for the required pre-termination hearing." See also *Enterprise Firefighters Association v. Watson,* 869 F.Supp. 1532, 1541, 1542 (D.Ala. 1994). ("The court further concludes that the violation of procedural due process in this case was 'complete when Davis was terminated without a hearing' and that the violation was not 'cured by the hearings he received after his termination'. . . By its very nature, however, when the violation of due process is a failure to provide a pre-termination hearing, the violation cannot be cured subsequent to termination. The right is lost once termination has been effected. If the rule were otherwise, a public employee's right to a pre-termination hearing as explicated in *Loudermill*, would be chimerical and ultimately meaningless because it could be 'cured' in each instance simply by providing a hearing after termination...Moreover, the violation of due process is complete even if it later appears certain that the termination was substantively correct. . .").

The plaintiff's rights under the Due Process Clause of the Fourteenth Amendment are unaffected by the terms of the CBA, which do not provide for notice or an opportunity to be heard prior to termination. The CBA does not effect a waiver of the plaintiff's due process rights, nor does it serve as an adequate substitute for them. See *Ciambriello v. County of Nassau*, 292 F. 3d at 321, 322 ("Even if unions are permitted to waive their members' Fourteenth Amendment rights, the CBA at issue here fails to do so."). Nothing about the CBA even purports to waive the plaintiff's due process rights. "A public employee's right to a pre-

10

deprivation hearing derives from the Fourteenth Amendment, not from any statute or regulation...Because defendants have not pointed to any provision of the CBA that even purports to waive ...[plaintiff's]...Fourteenth Amendment right to a pre-demotion hearing, we find that he has not waived that right." *Id.* at 322. A waiver of constitutional rights must be clear. *Id.* at 322. "A union might bargain away its members' pre-deprivation rights for something else or waive them for some reason, and an employee might decide to forego those rights in a particular case, *cf. Cliff v. Bd. of School Comm'rs of City of Indianapolis*, 42 F.3d 403, 413 (7th Cir. 1994) (plaintiff waived right to a pretermination hearing to which she was entitled), but we shall not assume a waiver unless it is more explicit." *Chaney v. Suburban Bus Div. of the Reg'l Transp. Auth.*, 52 F.3d 623, 630 (7th Cir. 1995). "Procedural due process rights are accorded special protection because they belong to that special category of rights first described in Justice Stone's famous footnote 4, namely those that are necessary to protect all other rights from encroachment by a more powerful majority. *United States v. Carolene Prods. Co*, 304 U.S. 144, 153 n.4, 82 L. Ed. 1234, 58 S. Ct. 778 (1938)."

The fact that the CBA does not provide for a pre-deprivation hearing only means that the plaintiff is entitled to more due process than the CBA provides. *Ciambriello v. County of Nassau*, 292 F. 3d at p. 323. Due Process requires pre-termination notice and an opportunity to respond even where a CBA provides for post-termination procedures that fully compensate the wrongfully terminated employee. *Chaney v. Suburban Bus Div. of the Reg'l Transp. Auth.*, 52 F.3d at 629 (7th Cir. 1995).

  b. *Defendants' Monell Claims*

The defendants' motion for summary judgment is restricted to their claim that with regard to her Title 42 U.S.C. § 1983 cause of action, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 56 L.Ed. 2d 611, 98 S.Ct. 2018 (1978), the defendants are not liable to the plaintiff in their official capacities. In advancing this contention, the defendants do not address the plaintiff's cause of action brought against the defendant, Bridgeport Board of Education, for disability discrimination in violation of the Connecticut Fair Employment Practices Act, or the plaintiff's claim against the defendant, Pannozzo, in her individual, personal capacity under Title 42 U.S.C. § 1983. Regardless of the outcome of the defendants' motion for summary judgment, this court will retain jurisdiction over these other causes of action. First, the court has jurisdiction over the claim against Pannozzo pursuant to Title 28 U.S.C. § 1343 (a) (3). Second, the court possesses supplemental jurisdiction over the plaintiff's state law claim. "The federal statute providing for supplemental jurisdiction over state-law claims allows a federal district court to retain supplemental jurisdiction over state-law claims even after dismissing all claims over which it has original jurisdiction." *Atchinson v. District of Columbia,* 73 F.3d. 418 at 424 (D.C. Cir. 1996). See Title 28 U.S.C. § 1367(c) (3).

A municipal entity may be liable under *42 U.S.C. § 1983* only if the alleged constitutional violation was caused by the entity's "policy or custom." *Monell, 436 U.S. at 694*. The "policy or custom" requirement, however, "is intended simply to distinguish acts of the municipality from acts of its employees, in order that municipal liability be limited to conduct for which the municipality is actually responsible." *Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999).* Thus, if the challenged action is directed by an official

12

with "final policymaking authority," the municipality may be liable even in the absence of a broader policy. See *Pembaur v. City of Cincinnati, 475 U.S. 469, 481-83, 89 L. Ed. 2d 452, 106 S. Ct. 1292 (1986)*; See also *Mandell v. County of Suffolk*, 316 F. 3d 368, 385 (2d Cir. 2003) ("Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered."). The defendant, Bridgeport Board of Education, and the defendant, Pannozzo, are liable to the plaintiff because Pannozzo was the final policymaker with respect to the termination of the plaintiff's employment. The defendants' assertion that Pannozzo's firing of the plaintiff was subject to review by the Superintendent of Schools, as evidenced by the reversal of the plaintiff's termination, is merely a pretext, well after the events in question, to obfuscate Pannozzo's final authority over the plaintiff's termination. The plaintiff was terminated from her position on October 3, 2002. She instituted the present action on October 10, 2002. It was over eight months later that the Superintendent of Schools offered to reinstate the plaintiff. The elapse of time between the firing of the plaintiff and her reinstatement refutes the claim that Pannozzo's actions were subject to review by the Superintendent of Schools[3].

Additionally, the documents submitted by the defendants with the McCarthy affidavit demonstrate the final policy making role played by Pannozzo in the termination of non-professional staff employees. On each termination notice, the name of the Superintendent of

---

[3] Even with her reinstatement, the plaintiff has not been truly restored to her position; the plaintiff has not been financially made whole for the period she was involuntarily kept out of work.

Schools is conspicuously absent, except for one[4]. However, Pannozzo is copied on each notice since assuming her position further evidencing her final policy making position.[5]

For summary judgment purposes, although the determination as to whether Pannozzo is a final policymaker is a question of law for the court to determine, there exists sufficient evidence to support a legal conclusion that Pannozzo was the final policymaker with respect to the termination of the plaintiff's employment, thereby making her actions the official policy of the Bridgeport Board of Education. See *Anthony v. City of New York*, 339 F.3d 129, 139 (2003).

PLAINTIFF – MARSHA HANNA

BY_____
Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT  06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Fed. Bar #ct07805

---

[4] See Exhibit E attached to the McCarthy affidavit; Superintendent Salcedo is copied, however, this was prior to the time of Pannozzo's appointment as interim director.  C.P. dep. pp. 5,6.

[5] See Exhibit A attached to the McCarthy affidavit;  Pannozzo is not listed on this letter, however, it appears to be prior to the time she was made interim director.  C.P. dep. pp. 5,6.

## **CERTIFICATION**

      I hereby certify that a copy of the foregoing *Memorandum in Opposition to Defendants' Motion For Summary Judgment* has been sent, by First Class Mail, postage prepaid, on this 21st day of November, 2003, to:

David J. Kelly, Esquire
DURANT, NICHOLS, HOUSTON, HODGSON &
CORTESE-COSTA, PC
1057 Broad Street
Bridgeport, CT  06604
Tel: 203-366-3438
Federal Bar No. ct19775

                                                                       _____
                                                                         Thomas W. Bucci