UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARSHA HANNA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 3:02CV1797(DJS) |
| | : | |
| CAROLE PANNOZZO, in her | : | |
| official capacity as Interim | : | |
| Director of Human Resources | : | |
| for the Bridgeport Board of | : | |
| Education and in her | : | |
| individual capacity; and THE | : | |
| CITY OF BRIDGEPORT BOARD OF | : | |
| EDUCATION | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OF DECISION

On October 10, 2002, by way of 42 U.S.C. § 1983, plaintiff Marsha Hanna filed this action alleging that defendants, Carole Pannozzo and the City of Bridgeport Board of Education (hereinafter "Board"), deprived her of a property interest in violation of the Due Process Clause of the Fourteenth Amendment. On September 12, 2003, plaintiff amended her complaint to allege a second cause of action for disability discrimination in violation of the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-51-46a-104, and to set forth a specific count against Pannozzo in her individual capacity alleging that Pannozzo deprived Hanna of a property interest in violation of the Due Process Clause of the Fourteenth Amendment. On September 10, 2003, pursuant to Rule 56(b) of the Federal

Rules of Civil Procedure, the Board filed a motion for summary judgment on Hanna's 42 U.S.C. § 1983 due process claim against it.  (See Dkt. # 13).  For the reasons set forth herein, the Board's motion is **GRANTED.**

## I. FACTS

The employment relationship between plaintiff Marsha Hanna and the defendant City of Bridgeport Board of Education ("the Board") commenced in November of 1992 when Hanna assumed the non-professional position of Clerical Assistant. She was promoted to Clerical Specialist during her approximate ten-year period of employment and held that title until her termination on October 4, 2002.  Defendant Pannozzo is being sued in her capacity as the Interim Director of Human Resources for the Bridgeport Board of Education and also in her individual capacity. Thomas McCarthy is a Labor Relations Officer for the City of Bridgeport, and his assignment includes the administration of the applicable collective bargaining agreement ("CBA") with respect to the Board's non-professional employees.  McCarthy oversaw all pre-termination hearings conducted with respect to non-professional employees.

The terms and conditions of Hanna's employment were governed by the CBA entered into between the City of Bridgeport[1] and Local

---

[1] The City of Bridgeport, and not the City of Bridgeport Board of Education, executed the CBA.  The parties, however, attach no significance to this fact.

1522, AFSCME, AFL-CIO.  The CBA sets forth, among other things, job descriptions, terms of employment, hours, and wages.  It also provides the explanation of Annual Leave, Medical and Family Leave.  It also establishes the procedure for disciplining employees and contains a grievance procedure, which entitles a member of the bargaining unit to file a grievances if a member believes the employer's actions violated the CBA.  There is a five step grievance procedure, which is fully set forth in Section II, Article 21 of the CBA.

Hanna was terminated from her position as of October 4, 2002 by letter dated October 3, 2002.  Pannozzo told Hanna that her employment was terminated because Hanna was unable to perform her duties as a clerical specialist without restrictions.  Hanna filed a grievance pursuant to the CBA with the City of Bridgeport, wherein she challenged her termination from employment as unfair and unjust, demanded that she be reinstated, and sought to recover lost wages and benefits.  This grievance was initially denied on October 28, 2002.  On February 3, 2003, Hanna's union representative filed a request to arbitrate with the Connecticut State Board of Mediation and Arbitration. A hearing was set for January 7, 2004, but, on June 10, 2003, the Superintendent of Schools, Sonia Diaz, extended an unconditional offer to Hanna to return to work in the position of a Clerical Specialist, which Hanna accepted.  The arbitration hearing did

not take place.

The parties disagree as to why Hanna was terminated.  On October 6, 2000, Hanna fell during the course of her employment at Black Rock School and injured her back.  Shortly thereafter, Hanna was placed on workers' compensation leave from her position.  While receiving treatment, Hanna's condition worsened to the point where a spinal fusion surgical procedure was scheduled for September of 2001.  In order to have the spinal fusion, Hanna needed a medical release from her cardiologist. Hanna underwent a cardiac stress test in August 2001 and, based on the results, underwent a quadruple heart bypass surgery in August of 2001.

In a letter dated April 8, 2002, the Labor Relations Officer, Marilyn Flores, wrote to Hanna that her twelve-month leave period prescribed by the CBA had expired and directed Hanna to inform the Labor Relations Officer if she was intending to return to her position in a full-time capacity or if Hanna would request an accommodation.  After exchanging correspondence with the Labor Relations Office regarding the appropriate medical releases, the Board allowed Hanna to return to work, without restrictions, on September 4, 2002.

Within a couple of weeks, Hanna complained of angina.  Hanna spoke with her doctor, and he suggested that she try to avoid climbing stairs and that Hanna should ask her supervisor if she

could limit stair climbing to once a day.  Hanna spoke to her supervisor, Cathy Nied, in mid-September, and Nied denied her request.  Hanna also spoke to the head principal, Mr. Remy, about her medical situation, and he indicated to Hanna that he would get back to her, but never did.   Hanna obtained a letter from Dr. Adefuin dated September 27, 2002 stating that Hanna needed to avoid climbing stairs and was to limit any walking to short distances.  Hanna gave this letter to Nied and the Board.

On October 2, 2002, Pannozzo called Hanna and asked her to come to her office the following day.  On October 3, 2002, Hanna went to Pannozzo's office and was given a termination letter effective October 4, 2002. There was no forewarning of the termination, that a termination was under consideration, or the reasons for the termination prior to the meeting. On October 10, 2002, Hanna filed a grievance over her discharge and claimed that her termination was unfair and in violation of the CBA.  On October 28, 2002, McCarthy denied the grievance because there was no contractual violation and because the Union had failed to follow the proper steps in filing a grievance.  An arbitration hearing was set for July 23, 2003, but was rescheduled until January 7, 2004.  On June 10, 2003, the Superintendent of Schools for the Board offered to reinstate Hanna to a Clerical Specialist position.  Hanna accepted the offer and was placed in the Longfellow Elementary School effective August 25, 2003.  Hanna's

-5-

seniority was reinstated, but she was not compensated for the time she was not employed through lost wages and benefits.

Hanna alleges that she was terminated because of her medical disability, even though the accommodation that she was seeking would not impede on her daily duties as a Clerical Specialist. She also claims that defendants did not follow the proper procedures for terminating her employment. The defendants claim that Hanna was not terminated for reasons of her medical disability, and that they adhered to the necessary procedures for terminating Hanna.

## II.  DISCUSSION

Hanna alleges that Pannozzo, acting pursuant to a policy or procedure created or endorsed by the Board, terminated her in violation of the Fourteenth Amendment. Specifically, Hanna alleges that Pannozzo should have provided notice of the reasons for terminating her employment and a pre-termination hearing, and that Pannozzo was in a position to make Board policy with respect to terminating non-professional employees.

### A.  STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.

-6-

R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to demonstrate the absence of any material factual issue genuinely in dispute.'" American Int'l Group, Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981) (quoting Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975)).  A dispute concerning a material fact is genuine "'if evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  The court must view all inferences and ambiguities in a light most favorable to the nonmoving party. See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Id.

## B.  MUNICIPAL LIABILITY

The Board claims that it cannot be liable for damages resulting from Hanna's termination because there is no custom or policy allowing summary termination of a non-professional employee subject to the terms of the CBA and because Pannozzo was not in a position to create a Board policy or custom to that

effect.  Hanna's claims must be evaluated pursuant to the Supreme
Court's decision in Monell v. Department of Social Services, 436
U.S. 658 (1978).  Under Monell, a municipality may liable under
Section 1983 "when execution of [its] policy or custom, whether
made by its lawmakers or by those whose edicts or acts may fairly
be said to represent official policy, inflicts the injury."  Id.
at 694.  A plaintiff must prove "both the existence of a
municipal policy or custom and a causal connection between that
policy or custom and the deprivation of his constitutional
rights" to hold a municipality liable under Section 1983.

    Where, as in this case,

        the contention is not that the actions complained of
        were taken pursuant to a local policy that was formally
        adopted or ratified but rather that they were taken or
        caused by an official whose actions represent official
        policy, the court must determine whether that official
        had final policymaking authority in the particular area
        involved.

Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000).  Specifically,
the court must determine, under state law, whether the official
has the authority to set municipal policy with respect to the
particular action at issue.  See id.  "Where a plaintiff relies
not on a formally declared or ratified policy, but rather on the
theory that the conduct of a given official represents official
policy, it is incumbent on the plaintiff to establish that
element as a matter of law."  Id. at 57-58.

    The Board asserts that Pannozzo did not have the authority

to set a policy of terminating non-professional employees without pre-termination hearings.  The Board correctly observes that Section 10-220 of the Connecticut General Statutes provides that the Board has the implied authority to adopt policies for the management of non-professional personnel.[2]  See Conn. Gen. Stat. § 10-220(a) ("Each local or regional board of education shall maintain good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district. . . ."); cf. Town of Wallingford v. Board of Ed. of Town of Wallingford, 152 Conn. 568, 574-75 (1965) (holding that Section 10-220 confers upon a local board of education the right to select its non-professional employees and that compliance with the municipality's civil service requirements does not infringe upon the board's right to govern its non-professional employees).  The final policymaker with respect to non-professional employee termination, pursuant to Connecticut law, is therefore the Board.

Hanna's arguments to the contrary are not persuasive.  Hanna argues that Pannozzo did in fact have the ability to set policy for terminating employees because the Superintendent or the Board

---

[2] A board of education's authority can be limited by a municipal charter.  See Local No. 1186, AFSCME v. Board of Ed. of City of New Britain, 182 Conn. 93, 102-03 (1980).  Here, the parties do not assert that the Board's statutory authority is limited in any way by the Charter of the City of Bridgeport.

did not act to reverse or correct Hanna's actions until eight months had passed since Pannozzo had summarily terminated Hanna's employment.  This fact does not alter the legal conclusion mandated by Connecticut state law; indeed, this fact support the Board's position because the Board did correct Pannozzo's actions and thus prevented her from formulating a policy.  Hanna also argues that Pannozzo signs the notices of termination, but this fact also does not support the premise that Pannozzo can formulate policy dictating how employees are terminated.

Pannozzo was not the final decisionmaker with respect to terminating non-professional employees.  Therefore, the Board cannot be held liable pursuant to <u>Monell</u> under Section 1983.  The court, however, expresses no opinion on the merits of the balance of Hanna's claims.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment (dkt. # 13) is **GRANTED**.  Judgment for defendant the City of Bridgeport Board of Education shall enter on the First Cause of Action set forth in the Second Substituted Complaint (dkt. # 24).

So ordered this 11th day of March, 2005.

**/s/DJS**
_____
    **DOMINIC J. SQUATRITO**
  **UNITED STATES DISTRICT JUDGE**

-10-